THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSE SCOTT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED SERVICES AUTOMOBILE ASSOCIATION, <br><br> Defendant. | CASE NO. C11-1422 JCC <br><br> ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 32), Plaintiffs' response (Dkt. No. 34) and Defendant's reply (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  BACKGROUND

In this case, the Court is called upon to interpret a Washington statute governing chiropractic care. On a motion to dismiss, the allegations in the complaint are taken to be true. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Plaintiffs were involved in various automobile collisions. Each Plaintiff informed Defendant of their accident and submitted a claim for Personal Injury Protection ("PIP") benefits. Defendant denied Plaintiffs' claims for PIP benefits relating to chiropractic treatment they received for injuries sustained as a result of the collisions. Plaintiffs now bring several claims for relief stemming from these denials, including a

claim for violation of the Washington Consumer Protection Act, a claim for injunctive relief, and claims for breach of contract and bad faith. The Complaint also brings a series of claims related to Defendant's failure to disclose the availability of discounted treatment though PPOs. The parties have informed the Court that all claims related to PPOs have been settled, and the Court will not address them here.

## II. APPLICABLE LAW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. In reviewing a defendant's motion, then, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Although Rule 12(b)(6) does not require courts to assess the probability that a plaintiff will eventually prevail, the allegations made in the complaint must cross "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949.

"When interpreting state laws, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* at 1239. In Washington, "[s]tatutory interpretation begins with the statute's plain meaning" and courts must "construe statutes such that all of the language is given effect." *Lake v. Woodcreek Homeowners Ass'n*, 243 P.3d 1283, 1288 (Wash. 2010) (citing *Rest. Dev., Inc. v. Cananwill, Inc.*, 80 P.3d 598 (2003)). "Where a statute does not define a nontechnical, but vitally important word, [the Court] may look to the dictionary for guidance." *Seattle v. Williams*, 908 P.2d 359, 363 (Wash. 1995).

## III. DISCUSSION

Under its Washington PIP policies, Defendant must pay for the "medical expenses" incurred by its insureds that were caused by a car accident. (Dkt. No. 35 Ex. 1). The policies define "medical expenses" as "payments for all *reasonable and necessary* expenses incurred by or on behalf of the covered person for injuries sustained as a result of an automobile accident for health services provided by persons licensed under Title 18 RCW," the statutory title under which chiropractors are regulated. *Id.* In determining whether an insureds' medical bills are reimbursable "reasonable and necessary" medical expenses under its policies, Defendant consults with health care professionals, hereinafter referred to as consulting chiropractors. These consulting chiropractors review information about an insured's history, treatment, and claims and then recommend an appropriate level of coverage to Defendant. One way for consulting chiropractors to make this recommendation to the insurer is to review billing and medical records ("records reviews"). Another way is for the insurer to ask the insured to submit to an independent medical examination ("IME"), in which a consulting chiropractor performs a physical examination of the insured. Plaintiffs argue that a consulting chiropractor must always perform a physical inspection, and that an insurer's reliance merely on records reviews, without a physical inspection, is a violation of Washington law.

Plaintiffs' argument derives from Chapter 18.25 RCW, the Washington statutes regulating chiropractic care. These statutes mandate physical inspections in certain circumstances. RCW 18.25.005(3) states: "As part of a chiropractic differential diagnosis, a chiropractor shall perform a physical examination, which may include diagnostic x-rays, to determine the appropriateness of chiropractic care or the need for referral to other health care providers." RCW 18.25.006(8) defines a chiropractic differential diagnosis as "a diagnosis to determine the existence of a vertebral subluxation complex, articular dysfunction, or musculoskeletal disorder, and the appropriateness of chiropractic care or the need for referral to other health care providers." Plaintiffs argue that when a consulting chiropractor makes a recommendation to an insurer, he has performed a chiropractic differential diagnosis and

triggered the requirement for a physical examination. Defendant argues that the "appropriateness" language in the statute should not be conflated with the "reasonable and necessary" language in the policies. Further, Defendant argues, a chiropractic differential diagnosis is fundamentally different from a review of an insured's records, and rules that apply to one should not necessarily apply to the other.

To resolve this issue, the Court delves into the definitions of each of the relevant words to determine whether a consulting chiropractor is indeed performing a chiropractic differential diagnosis. For the definitions in this paragraph, the Court refers to the online Merriam-Webster dictionary.[1] In Plaintiffs' own account, a consulting chiropractor is determining whether care is "reasonable and necessary." "Reasonable" is best defined as "not extreme or excessive." "Necessary" is defined as "absolutely needed." To paraphrase, the consulting chiropractor's task is to screen for chiropractic care that was either excessive or not absolutely needed. This is a secondary function: it is an evaluation not of patients, but of practitioners. It is not easily apparent that this definition corresponds with the statutory definition of a chiropractic differential diagnosis.

The first part of that definition is "a diagnosis," defined as "the art or act of identifying a disease from its signs and symptoms." The definition concludes that a chiropractic differential diagnosis determines the appropriateness of chiropractic care or the need for referral to other health care providers. "Appropriate" is defined as "especially suitable or fitting." In the context of the entire phrase, "and the appropriateness of chiropractic care or the need for referral to other health care providers," it is clear that "appropriateness" refers to a practitioner's determination that either the patient is suffering from a disease that chiropractic care would best treat, or one for which other forms of care would be most beneficial. This accords with the dictionary definition of differential diagnosis: "the distinguishing of a disease or condition from others

---

[1] http://www.merriam-webster.com (last checked May 3rd, 2012).

ORDER
PAGE - 4

presenting with similar signs and symptoms." This is a primary function: it is an evaluation of patients. The object of a diagnostic/appropriateness inquiry is fundamentally different from the object of a reasonable/necessary inquiry. Neither the purpose nor the language of these endeavors overlap.

Plaintiffs do not explain or even acknowledge this distinction. With no attempt to define the relevant terms or place them in context, Plaintiffs state that "determining the appropriateness of chiropractic care" is "precisely" what the consulting chiropractors are doing for Defendant. As discussed above, this is simply not true. The consulting chiropractors are determining the reasonableness and necessity of chiropractic care. To be precise, these words have materially different meanings from appropriateness and the Court cannot overlook the incongruity.

Plaintiffs again try to gloss over the distinction by arguing "These statutory standards regarding chiropractic diagnosis make no distinction between a diagnosis performed by a patient's health care provider and a diagnosis performed by a consulting chiropractor to determine whether chiropractic treatment is 'reasonable and necessary.'" But here, Plaintiffs are assuming the truth of their own conclusion by labeling what a consulting chiropractor does a "diagnosis." Identification of a disease and determination that chiropractic care would be an effective treatment may be a diagnosis. But a review of that treatment for efficiency and waste is not. From the plain language of the statute, the Court finds that the physical-examination requirement of RCW 18.25.005 does not apply to consulting chiropractors when they act in such a capacity.

Many of the parties' remaining arguments amount to a reading of legislative tea-leaves. Plaintiffs argue that if the Legislature intended to limit the standard of chiropractic care set forth in RCW 18.25.005 to the primary relationship between a health care provider and a patient, "it would have so stated." (Dkt. No. 34 at 8). Defendant, for its part, argues that the Legislature could have regulated the practice of consulting with medical professionals who conduct record reviews, but chose not to. (Dkt. No. 32 at 9–10). Elsewhere Defendant argues that the

ORDER
PAGE - 5

Washington Administrative Code authorizes insurers to consult health care professionals, but does not specifically mention a physical inspection or an IME. (*Id.* at 11–13). The fact that opposing inferences can be derived from silence is an excellent indicator of its value as a guide. *See Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 11 (U.S. 1942) ("The search for significance in the silence of Congress is too often the pursuit of a mirage."). The Court will not entertain these suppositions.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 32) is GRANTED. The Clerk is DIRECTED to CLOSE the case.

DATED this 8th day of May 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 6